# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE LYNN LUNSFORD,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 16-00529-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Julie Lynn Lunsford ("Plaintiff") challenges the Commissioner's[1] denial of her application for supplemental security income benefits ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED and the case is REMANDED to the Social Security Administration for further proceedings.

///

///

///

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

## II.    PROCEEDINGS BELOW

On May 16, 2012[2], Plaintiff applied for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). (AR 145.) In her application, Plaintiff alleged disability beginning on February 8, 2012. (*Id*. at 10, 170.) Plaintiff's claims were initially denied on March 28, 2013, and upon reconsideration on September 10, 2013. (*Id*. at 65-81, 85.) Plaintiff then filed a written request for a hearing. The ALJ held a hearing on July 8, 2014, in San Bernardino, California, at which Plaintiff testified. (*Id*. 13, 31-56.) An impartial vocational expert ("VE") also testified at the hearing. (*Id*. at 53-55.) On October 22, 2014, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] since the date the application was filed. (*Id.* at 22.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3.) Plaintiff filed this action on March 23, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2012, the application date. (AR 12.) At **step two**, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the left knee; bipolar disorder; psychotic disorder, not otherwise specified; and posttraumatic stress disorder. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments

---

[2] The ALJ's decision states that Plaintiff applied for benefits on April 30, 2012, however, the administrative records indicate that Plaintiff applied on May 16, 2012. (AR 145.) Because the date is not material to the Court's findings and conclusion, the Court does not address this further.

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 13.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 416.967(b) except that she can lift or carry 20 pounds occasionally and 10 pounds frequently; she can stand and walk for 2 hours in an 8-hour day; she can sit for 6 hours in an 8-hour day; she cannot push or pull with her left leg, work on unprotected heights, walk on uneven ground, climb ladders, crawl, or balance; she can occasionally stoop, bend, and climb stairs and ramps; she can perform routine, noncomplex tasks in a nonpublic setting; and she cannot have sustained, intense interaction with coworkers or supervisors.

(AR at 15.)

At **step four**, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 20.) At **step five**, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 21.) Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . since April 30, 2012, the date the application was filed." (*Id.* at 22.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises four issues in her appeal: (1) whether the ALJ properly considered the criteria of Listing 12.04; (2) whether the ALJ properly considered the criteria of Listing 1.02A; (3) whether there is a Dictionary of Occupational Titles (DOT) inconsistency in the ALJ's holding that the Plaintiff can perform the jobs such as packer and small products assembler; and (4) whether the ALJ properly considered Plaintiff's treating physician's opinion. (Joint Stip. at 3.) The Court addresses Plaintiff's last issue first.

### a. The ALJ Erred in Considering Plaintiff's Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Plaintiff's treating psychiatrist's opinion. The Court agrees.

///

### i. Pertinent Law

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled to greater weight than a non-examining physician's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted). If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" that are supported by substantial evidence for rejecting it. *Orn*, 495 F.3d at 633. An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

### ii. Dr. Walayat's Opinion

Dr. Walayat, Plaintiff's treating psychiatrist, completed a mental disorder questionnaire on June 17, 2013. (AR 259-263.) In that questionnaire, Dr. Walayat diagnosed Plaintiff as having bipolar depression and post-traumatic stress disorder and indicated that he did not expect her condition to improve. (*Id.* at 263.) Additionally, Dr. Walayat described his general observations of Plaintiff as crying with reported manic mood swings and anger outbursts. (*Id.* at 259.) He described her current mental status as angry with mood swings and rapid speech and racing thoughts. (*Id.* at 260.) He assessed her intellectual functioning as oriented with poor memory and poor concentration. (*Id.*) He stated that Plaintiff presented as delusional and paranoid. (*Id.* at 261.) In her activities of daily living, Dr. Walayat

stated that Plaintiff is able to clean the house, cook, and pay bills, but sleeps all the time due to depression and has to be prompted to take care of her hygiene. (*Id.*) In the area of social functioning, Dr. Walayat noted that Plaintiff has no contact with neighbors and fights with her sister all the time. (*Id.* at 262.) Dr. Walayat assessed Plaintiff as having poor attention and focus due to her depression. (*Id.*) With respect to Plaintiff's ability to adapt to work and work-like situations, Dr. Walayat reported that Plaintiff has a poor attendance record, anger outbursts, and that Plaintiff did not get along well with her supervisor. (*Id.*) At the time he completed the questionnaire, Dr. Walayat had been treating Plaintiff monthly for the previous seven months. (*Id.*)

Additionally, Dr. Walayat's monthly treatment records for Plaintiff from July 2013 to January 2014 consistently report auditory and visual hallucinations, mood swings, and depressed mood. (AR 355-59.) Dr. Walayat diagnosed Plaintiff as having bipolar disorder with recurrent/current episodes of depression, unspecified psychosis, and post-traumatic stress disorder, and psychotic disorder not otherwise specified. (*Id.*) Finally, in May 2014, Dr. Walayat completed a Patient Depression Questionnaire, which reported the same diagnoses as in his monthly reports. (*Id.* at 384-86.)

    *iii.    ALJ's Decision*

The ALJ gave partial weight to Dr. Walayat's opinion, which was contradicted by two other consultative examiners' opinions. (AR 19.) The ALJ stated that Dr. Walayat noted that Plaintiff's "mental condition interferes with some of her daily activities, social functioning, concentration, task completion, and ability to adapt to work or work-like situations []." (*Id.*) However, the ALJ discounted Dr. Walayat's opinion finding that aspects of the opinion were not supported by his own treatment notes or other objective evidence. In elaboration, the ALJ pointed to Dr. Walayat's assessment that Plaintiff "would not get along very well with supervisors" and noted that this assessment is contradicted by

6

Plaintiff's "statements that she has never been fired from her previous jobs or had conflicts with authority figures." (*Id.*) The ALJ did not provide any other examples of how Dr. Walayat's opinion is contradicted or set forth any additional explanation for discounting Dr. Walayat's opinion.

    *iv.    Analysis*

As described above, the ALJ discounted aspects of Dr. Walayat's opinion because they were not supported by this own treatment notes or other objective evidence. This conclusory statement, without more, is not a specific and legitimate reason supported by substantial evidence. *Reddick*, 157 F.3d at 725. However, the ALJ did provide a reason beyond this conclusory statement, pointing to a contradiction between Dr. Walayat's opinion and Plaintiff's own statements. Based on its review of the administrative record, however, the Court finds this not to be a specific and legitimate reason supported by substantial evidence.

The ALJ's reference to Plaintiff's purportedly contradictory statements about not having been fired and having no conflict with authority figures is drawn from Plaintiff's Function Report, dated July 20, 2012, and completed by Plaintiff. (AR 182-89.) In that report, Plaintiff stated that she has never been fired or laid off for poor personal or professional conduct. (*Id.* at 188.) However, in responding to the question, "How well do you get along with authority figures? (For example, police, bosses, landlords or teachers)," Plaintiff answered: "Well I don't have any problems with police or landlord but bosses and my kids teachers can be a challenge enough to push my buttons." (*Id.* at 188.) The ALJ's decision omits reference to this last part of Plaintiff's response.

It is well settled that ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings." *Bostwich v. Colvin*, 13-cv-1936-LAB, 2015 WL 12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ cannot selectively rely on some entries in administrative records and ignore others)). The record here shows

that the ALJ selected a portion of Plaintiff's answer as the basis for finding a contradiction between Plaintiff's statements and Dr. Walayat's assessment. A review of Plaintiff's full answer reveals a more nuanced, and mixed, self-report by Plaintiff of her functional abilities. Because the ALJ did not acknowledge this mixed self-assessment or elaborate on how the complete statement contradicts Dr. Walayat's opinion, the Court is left with an inadequate basis to conclude that the ALJ's reason is a specific and legitimate one supported by substantial evidence. And, as noted above, the ALJ's decision does not set forth any other reasons for discounting Dr. Walayat's opinion.

Accordingly, the Court finds that the ALJ selectively referenced Plaintiff's statements to support the ALJ's finding that Dr. Walayat's opinion is contradicted by other objective evidence. While the ALJ need not discuss each piece of evidence in the record, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), he is required to view evidence "in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (citations omitted); *see also Reddick*, 157 F.3d at 725 (ALJs satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and *conflicting clinical evidence*, stating his interpretation thereof, and making findings") (emphasis added). The ALJ has not done this, and the Court concludes that this was legal error. The Court further finds that remand is warranted for proper consideration of Dr. Walayat's opinion.

Having found that remand is warranted, the Court declines to address Plaintiff's arguments regarding whether the ALJ properly considered the criteria for Listing 12.04 at step three and whether there is a DOT inconsistency at step five. These issues may be impacted based on the ALJ's reassessment of Dr. Walayat's opinion, and thus the Court does not address them here.

///

///

### b. Plaintiff Does Not Meet or Equal Listing 1.02A

Plaintiff contends that there is ample evidence to establish that she meets the criteria for Listing 1.02A. (Joint Stip. at 13.) The Court concludes that Plaintiff failed to meet her burden to show that her impairment meets or equals the criteria of Listing 1.02A.

A claimant has the burden of demonstrating disability under the Listings. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

Under Listing 1.02A, a claimant must demonstrate: (1) major dysfunction of a peripheral weight-bearing joint (i.e., hip, knee or ankle) characterized by gross anatomical deformity with chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint(s); (2) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)"; and (3) an inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. Section 1.00B2b defines "inability to ambulate effectively" as an "extreme limitation of the ability to walk," and provides examples including "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.002B2b.

In his decision discussing whether Plaintiff's physical impairments meet Listing 1.02, the ALJ stated that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (AR 13.) Based on its review of the medical evidence, the Court concurs that medical evidence demonstrates that Plaintiff does not meet or equal Listing 1.02A.

First, Plaintiff provided no medical imaging reflecting the findings specified in Listing 1.02A. An x-ray of Plaintiff's hips showed "mild osteoarthritic changes of both hips" and "mild left sided hip dysplasia; an x-ray of her knee found "no abnormality delineated." (AR 240-41, 288.) Second, other medical evidence in the administrative record notes that Plaintiff "ambulates independently and walks well," (*id*. at 269, 275) and "has a normal gait and balance, and does not require the use of assistive devices for ambulation" (*id*. at 296). Further, Plaintiff testified at the administrative hearing that she can walk, although with a little bit of a limp to compensate for her hip, when she wears a knee brace. (*Id.* at 39-40.)

In support of his argument of error, Plaintiff cites to *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990), for the proposition that "in determining whether a claimant equals a listing under step three of the . . . disability evaluation process, the ALJ must explain adequately his evaluation of . . . the combined effects of the impairments." *Id*. at 176; *see also* Joint Stip. at 7-9. Plaintiff contends that the ALJ's cursory analysis within the step three section of his decision was insufficient.

While boilerplate findings are insufficient to support a conclusion that a claimant's impairments do not meet or equal a listing, the Ninth Circuit has clarified that "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). A cursory step three analysis may therefore be cured by a proper discussion and evidentiary evaluation elsewhere in the ALJ's decision. Moreover, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch v. Barnhart*, 400 F.3d at 683).

Here, the ALJ devoted at least one full page to the discussion and evaluation of the evidence that supports his conclusions regarding Plaintiff's physical

impairments. (*See* AR 12, 16-17.) Additionally, the record does not indicate that Plaintiff presented any evidence of equivalence.

For these reasons, the Court finds that the ALJ's evaluation of the evidence is sufficient to support his step three conclusion regarding Listing 1.02A.

### c. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's error, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, as discussed above, remand for further administrative proceedings is appropriate. On remand, the ALJ shall reassess the opinion of Dr. Walayat and provide legally adequate reasons for discounting or rejecting any portion of the opinion. The ALJ shall then proceed through the sequential evaluation process, beginning at step three to determine whether Plaintiff meets Listing 12.04, and, if warranted, proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

///

///

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 30, 2017

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**